UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

State Farm Fire and Casualty Company
As subrogee and assignee of Martha L. Dean,

           Plaintiff,

v.

Johnson Controls, Inc. and
Johnson Controls Battery Group, Inc.,

           Defendants.

No. 2:15-cv-02559-STA-CGC

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff's motion to compel is entirely baseless and should be denied. Plaintiff misrepresents to the Court that Defendants have refused to produce documents when the discovery responses themselves clearly belie Plaintiff's false accusations. The Court should deny Plaintiff's motion and award Defendants their costs in submitting this opposition.

**I.  Plaintiff's Motion To Compel Is Based On Significant Mischaracterizations And Blatant Misrepresentations.**

Plaintiff's vexatious motion appears to be purposely drafted to make it difficult for this Court and the Defendants to identify and understand exactly which existing documents Plaintiff claims Defendants have "refused" to produce. It contains numerous instances in which Plaintiff falsely assumes the existence of documents and several occasions where Plaintiff falsely states that Defendants have refused to produce materials even though the discovery responses themselves show the opposite. As best as Defendants can derive from Plaintiff's meandering motion, Plaintiff complains about discovery falling within two broad categories: (1) Defendants' investigation in this case and (2) preexisting information concerning battery fires and

"overheating." As set forth below, Defendants have properly responded with respect to both categories.

      A.    <u>Plaintiff's Arguments About Defendants' Investigation Materials Are Based On False Statements And False Assumptions</u>.

Plaintiff states at page 5 of its memorandum that it sought correspondence between Sears and the Defendants regarding Defendants' investigation and that "the Defendants refused to produce anything at all about their investigation in this case – not even what they exchanged with Sears . . . ." (ECF No. 32-1 at 5). In fact, Plaintiff's requests for production never even mention Sears. (ECF No. 32-4 at 26-32). Worse, Plaintiff's accusation that Defendants refuse to produce anything about their investigation is blatantly false. As Defendants' discovery responses clearly state, Defendants explicitly identified Plaintiff's vehicle service records and the photographs Plaintiff produced to Defendants as the investigation materials that Defendants have reviewed or generated. Defendants expressly offered to produce copies of these documents back to Plaintiff if Plaintiff no longer had them. (Id.)

Other than these limited materials, Defendants have no responsive documentation for good reason. (ECF No. 32-4 at 27). Defendants' investigation in this fire case will follow the industry standard guidance of the National Fire Protection Association as stated in "NFPA 921 Guide For Fire And Explosion Investigations." Under NFPA 921, investigations are conducted following the scientific method whereby a hypothesis is developed first, and then the hypothesis is analyzed and tested for validity. To date, Plaintiffs have not identified any hypothesis for how a defect in a flooded lead acid battery could possibly cause a fire. Defendants know it cannot in light of basic scientific principles, therefore, it is doubtful Plaintiff will ever identify a hypothesis. Nonetheless, if Plaintiff does, Defendants intend to analyze, test and investigate that

hypothesis for validity.  In any event, Defendants have never communicated with Sears or anyone else about the limited investigation performed to date.

Plaintiff's false assumptions and false accusatory statements concerning Defendants' limited investigation to date do not end with Plaintiff's misrepresentation to the Court that Defendants exchanged materials about their investigation with Sears.  Plaintiff also misrepresents to the Court that Defendants have claimed that Plaintiff's unauthorized destruction of the subject battery "severely prejudiced Defendants investigation" and that their products are "infallible."  (ECF No. 32-1 at 1).  Again, Plaintiff's misrepresentation is belied by the evidence.  As noted above, Defendants' investigation to date has been very limited because Plaintiff has not yet even identified a hypothesis for Defendants to investigate.  Additionally, Defendants have never stated that their investigation was prejudiced.  Rather Defendants have stated that their defense was prejudiced.  As Defendants noted, "Defendants intended to present the battery as evidence to the jury so they can view the battery's internal connections and how the components are put together.  (ECF No. 31 at 14).  Indeed, Defendants' position from the outset has been that Plaintiff's "destruction of the battery has severely prejudiced our ability to defend ourselves from a product defect allocation."  (ECF No. 32-2 at 9).  This is because Plaintiff has asserted a manufacturing defect which requires the subject product to be compared to the manufacturer's intent as reflected in his drawings and specifications.  *See e.g.* Restatement (Third) of Torts Prod. Liab. § 2 (1998).  As a result of Plaintiff's intentional spoliation, the jury will not be able to view the unaltered battery to see it did not deviate in any way from the manufacture's intent.

Nor have Defendants ever asserted that their products are infallible.  In fact, Defendants have produced volumes of documents showing that all lead-acid batteries fail at some point and show the risks and dangers inherent in such batteries.  (ECF No. 32-4 at 26-32).

Plaintiff also wrongly asserts that Defendants have waived the attorney-client privilege with respect to communications between its attorney and its employee witness or its customer[1] with respect to the battery, the fire, the fire's cause or suspected cause or the damages alleged to have been caused by the fire (i.e. the investigation). But Plaintiff does not inform the Court that Defendants expressly stated their objection to producing confidential attorney-client privileged communications and provided Plaintiff with a privilege log. (ECF No. 32-5 at 1-6 (privilege log)). For example, Defendants' discovery responses stated:

> **REQUEST NO. 2:** All documents, recordings, photographs, communications, and electronic data that refer to the Dean home, the Battery, the Fire, the Fire's cause or suspected cause, or the damages alleged to have been caused by the Fire.
>
> **ANSWER:** Defendants object to producing back to Plaintiff copies of the same documents, photographs and pre-suit correspondence already exchanged between the attorneys for the parties. Defendants also object to producing confidential attorney-client privileged communications between Defendants and its attorneys. Notwithstanding and without waiving its objections, Defendants state that the only responsive documents in its possession are documents received from Plaintiff, pre-lawsuit exchanges with Plaintiff's counsel and Defendants' communications with its attorneys with respect to Plaintiffs' claims.

(ECF No. 32-4 at 27).

Plaintiff now complains for the first time in its Motion to Compel that the log does not include communications forwarding records, photographs and an affidavit which Plaintiff assumes must exist. However, Plaintiff's assumption is mostly[2] wrong again

---

[1] Plaintiff has not sued Sears, but included Sears on early correspondence. Because Sears is a valued customer of Johnson Controls Battery Group, Inc., and because Defendants know that a defect in the subject flooded lead acid battery cannot cause a fire, Defendants agreed (verbally) to take the lead in defending this matter on behalf of themselves and Sears to further their common interest in disproving Plaintiff's allegation that they sold a defective battery. Under the law, confidential attorney-client communications between Sears and Defendants are protected by the common interest (joint defense) doctrine and attorney-client privilege. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 217-18, and 227 (Tenn. App. 2002) (holding that the attorney-client privilege protected communications regarding certain agreements that co-defendants made in order to pursue their common interests in defending against the plaintiff's claims). *See also, Smedley v. Lambert,* No. 3:12-00003, 2013 WL 1333320, at *2 (M.D. Tenn. Mar. 29, 2013) for the proposition that Tennessee law governs this issue in a diversity case.

[2] Defendants do have two privileged e-mails related to the December 28, 2015 affidavit of Mr. Liedhegner, but those e-mails were created after the privilege log was sent on December 18, 2015, so they were not on the log. These two

because Defendants' policy is not to include transmittal correspondence in their courier package enclosing discs of photos or documents.

      B.    <u>Plaintiff's Arguments With Respect To Defendants' Discovery Responses Concerning Pre-existing Documents Related To Fires And "Overheating" Are Also Unfounded</u>.

Plaintiff takes issue with Defendants' objection to three interrogatories and two document requests which seek information about flooded lead-acid batteries "overheating" or igniting. Defendants objected to interrogatories, numbers 10, 13, and 14, and requests to produce numbers 7 and 8 as partially vague and ambiguous with respect to Plaintiff's imprecise use of the word "overheat." As reflected in the industry documents that Defendants have produced to Plaintiff, "overheating" in a flooded lead-acid battery is a very technical issue that has nothing to do with ignition or a fire. Technically, overheating for a flooded lead-acid battery refers to the impact that heat has on shortening the service life of a battery through corrosion of the battery's plates and loss of active material from the plates. High temperature results in shorter service life for the battery.

Defendants have produced to Plaintiff numerous technical documents including the SAE J2801 Comprehensive Life Test from batteries which involve elevating the temperature of the battery using an oven or other high temperature means before cycling it to determine its useful life. Plaintiff has not claimed, and there is no evidence, that the subject battery's service life was shortened due to corrosion or loss of active material due to elevated temperature. Rather, Plaintiff's claim is that the subject battery ignited and caused a fire, which has nothing to do with "overheating" a flooded lead-acid battery as used in the technical documents.

---

e-mails are addressed here for efficiency and are included on a supplemental list for Plaintiff even though they were not part of any discovery request and no meet and confer conference has been had with respect to the affidavit, which was filed only 2 days before Plaintiff's lengthy motion to compel was filed on December 30, 2015.

Because Plaintiff's requests were inexplicit and lacked detail with respect to Plaintiff's use of the word "overheat", the meaning that Plaintiff intended was unclear in the context of the discovery requests. Consequently, Defendants properly objected that the request was partially vague. Additionally, Defendants objected that the request was partially ambiguous because the term "overheating" has more than one meaning and Defendants had difficulty knowing exactly which meaning Plaintiff intended. As reflected in the discovery responses, however, Defendants did not stand on these objections or refuse to respond to discovery. (ECF No. 32-4 at 30-31 and 35-36). Rather, Defendants interpreted the requests as relating to the possibility of a fire, which is the only issue raised in this case. (Id. at 20.) Defendants then responded with respect to the claims and defenses in this case by producing voluminous documents relating to effect of heat on batteries, explosion testing and labeling, technological advances to address safety risks with batteries and industry technical and service information with respect to flooded lead-acid batteries and ignition sources. (Id.) Defendants also provided their own proprietary design and quality control documents showing the features incorporated into the subject battery. (Id. at 28.)

Fed. R. Civ. P. 26 (b)(1) limits the proper scope of discovery to non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. To the extent that Plaintiff 's interrogatories 10, 13 and 14, and Plaintiff's requests 7 and 8 could be interpreted as attempting to obtain discovery that is relevant to any party's claim or defense in this case, Defendants responded thoroughly. Specifically, to the extent that Plaintiff's request sought information concerning fire or ignition, Defendants

responded in full. In the spirit of cooperation Defendants also provided readily accessible protocols and examples of test results relating to "overheating" shortened service life through corrosion or loss of active material simply so that Plaintiff can see that these materials are unrelated to fire or ignition. Defendants obviously did not undertake the monumental task of gathering and producing all test results related to life cycle temperature testing because that burden would be unbearable and the information has nothing to do with ignition or fires and is clearly outside the scope of Rule 26(b)(1).[3]

Finally, with respect to these same interrogatories and document requests, Plaintiff apparently complains that Defendants have actually produced too much. Specifically, at page 17, Plaintiff complains that the documents produced include research and testing back to 1978 and include information about more than just the specific model battery at issue in this case. While it is not clear why Plaintiff is concerned about receiving comprehensive materials, it is clear that these materials were produced as they exist in the ordinary course of business. Defendants did not redact them or alter them prior to production. They were produced exactly as published and include responsive information relevant to the design of the subject battery. Defendants had no obligation to redact the materials to exclude other types of batteries or limit the dates of testing.

Plaintiff apparently misunderstands the proper scope of discovery under Fed. R. Civ. P. 26(b)(1) because it confusingly attempts to equate the comprehensive scope of these pre-existing documents with the scope of discovery for prior occurrence information. Contrary to Plaintiff's argument, there is no authority suggesting that the mere fact that a pre-existing third-party

---

[3] Defendants perform such testing every day as part of their business so the burden of responding would clearly fall outside of the scope of Rule 26(b)(1). In the spirit of cooperation, Defendants provided Plaintiff with descriptions of these temperature test procedures and sample results so that Plaintiff can see that such documents are unrelated to fires or ignition as Plaintiff alleges in this case.

publication includes more information than that relevant to the subject product, that all of Defendants' other discovery responses must also include more than just that relevant to the subject product. With respect to Plaintiff's requests for information about prior occurrences, Defendants properly objected and responded with respect to substantially similar occurrences. In *Steede v. General Motors, LLC*, the court ruled that the plaintiff had not met its burden to show how the seatbelt system in the vehicle at issue was similar to the seatbelts in other vehicle models that were the subject of plaintiff's discovery. No. 11-2351-STA-dkv, 2013 WL 142484, at *9-10 (W.D. Tenn. Jan. 11, 2013). Plaintiff's conclusory statements of substantial similarity were not enough – she needed to make a fact-specific showing demonstrating that the vehicle systems were truly similar. (Id.) The same is true here.

In short, Defendants have fully complied with the proper scope of discovery set forth in Fed. R. Civ. P. 26(b)(1). Where objections were proper, they were made and non-objectionable materials were produced. Defendants' good faith is reflected in the discovery responses themselves.

## Conclusion

For each of the foregoing reasons, Defendants respectfully request that Plaintiff's Motion to Compel be denied and that Defendants be awarded their fees incurred in responding to Plaintiff's baseless motion.

Dated: January 29, 2016

- 9 -

        Respectfully submitted,

        /s/ Michael G. McLaren
        Michael G. McLaren (#5100)
        BLACK MCLAREN JONES RYLAND &
        GRIFFEE, P.C.
        530 Oak Court Drive, Suite 360
        Memphis, TN  38117
        Telephone (901) 762-0535
        Facsimile (901) 762-0539
        mmclaren@blackmclaw.com

        ATTORNEY FOR DEFENDANT
        JOHNSON CONTROLS, INC. AND JOHNSON
        CONTROLS BATTERY GROUP, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2016, the following attorney was served via the ECF filing system:

| | |
|---|---|
| Michael A. Durr | Attorney for Plaintiff |
| Quist, Cone & Fisher, PLLC | State Farm Fire and Casualty Company |
| 800 South Gay Street, Suite 2121 | |
| Knoxville, Tennessee 37929 | |
| 865/312-0440 | |
| mdurr@qcflaw.com | |

/s/ Michael G. McLaren
Michael G. McLaren